## MOSS v. GRANVILLE.

(Supreme Court, Appellate Term, First Department.　December 28, 1915.)

CONTRACTS ⚖⇛24—OFFER—ACCEPTANCE.

　Where plaintiff by telegram offered to sell his share in a business for his investment, defendant assuming the debts, and defendant replied that when he should be capable he would pay plaintiff what he thought was due him according to his telegram, no binding contract was created; plaintiff's offer not having been accepted by defendant, but counter a proposition urged, even though the statement that defendant would make the payment when capable might be construed as meaning in a reasonable time.

　[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 100–103; Dec. Dig. ⚖⇛24.]

　Lehman, J., dissenting in part.

Appeal from City Court of New York, Trial Term.

Action by Alcan Moss against Bernard Granville. From a judgment for plaintiff, defendant appeals. Reversed, and complaint dismissed.

Argued November term, 1915, before LEHMAN, BIJUR, and FINCH, JJ.

S. V. & G. P. Heimberger, of New York City (Simon Sultan and George P. Heimberger, both of New York City, of counsel), for appellant.

Walter M. Goldsmith, of New York City, for respondent.

FINCH, J. The action is for damages for breach of an executory contract to sell an interest in a business. The answer denies the contract, and whether there was a valid contract is the question for decision. The contract, if there be any, is contained in the following telegrams:

"Cincinnati, O., June 12, 1915.

"Bernard Granville, 154 W. 45th Str. N. Y. City. I will sell out for my investment and you assume all debts.　　　　　Alcan Moss."

"New York, June 12, 1915.

"Alcan Moss, Hotel Sinton, Cinti, O. As you have broken your agreement I have been compelled to carry the business with my own money rather than

⚖⇛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

see it a failure. When I am capable of giving you what I think is due you, I shall do so as per your telegraph of the 12th inst., 1915, of acceptance. This telegram cancels all agreements made between you and me.

                                                        "Bernard Granville."

For the purposes of the trial of the action, the respective parties stipulated, among other things, as follows:

"(3) The parties hereto further admit that the plaintiff's investment in said business on the 12th day of June, 1915, consisted of the following items:

(1) Cash advanced directly to said Lang as agent and manager afore-
      said, for the immediate purposes of the said business.........$699.88
(2) Attorney's fees paid for the preparation of the proposed Bernard
      Granville Publishing Company, Inc., and services rendered in
      connection with the proposed organization of said company....$ 50.00
Disbursements for telegrams received and sent by plaintiff..........$ 37.08

"(4) The parties hereto further admit that the possession and control of said business has ever since the 12th day of June, 1915, been vested in the defendant.

"(5) The defendant admits that he has not paid plaintiff anything on account of the alleged claim of the plaintiff herein.

"(6) The parties hereto admit that no verbal agreement or conversation with reference to the allegations contained in paragraph V of the complaint took place between the plaintiff and the defendant, or any of their agents or representatives, and that the said alleged agreement, if it exists, is contained in the annexed Exhibits A to T, inclusive."

It will be noted that the telegram from the defendant to the plaintiff says:

"When I am capable of giving you what I think is due you, I shall do so as per your telegraph of the 12th inst., 1915, of acceptance."

Even if it might be held, in accordance with the opinion of the trial court, that the words "when I am capable" mean within a reasonable time (and it is extremely doubtful if these words would lend themselves to that construction), it will be noted that the amount also is to be left to the decision of the defendant, namely, "what I think is due you." Apparently the defendant was under the impression that the telegram of June 12th by the plaintiff to him constituted an acceptance of previous propositions; but it cannot be construed other than as an offer, and the acceptance, if any, must be contained in the telegram from the defendant on the same day. A reading of the telegrams immediately preceding and subsequent show the contract, if any, was contained in the two telegrams set forth above.

"It seems to be well settled that if one party makes to another an offer by letter, and the offer is of a character which implies nothing to be done by the latter except to assent or decline, and he by letter accepts, adding no qualification, condition, or reservation, there is a mutual consent, and a contract is created by such letters. But, even where there is an acceptance, if it is not of the exact thing offered, or if it is accompanied by any conditions or reservations, however slight, then no contract is made, and the proposition to accept with such modifications is a rejection of the offer." Sidney Glass Works v. Barnes & Co., 86 Hun, 374, 33 N. Y. Supp. 508.

The language quoted applies to the present case. The acceptance did not meet the offer in two particulars, namely, *"when I am capable* of giving you *what I think* is due you."* (Italics not in original.) To

the same effect, see also Kirwan et al. v. Byrne, 6 Misc. Rep. 528, 27 N. Y. Supp. 143; Marschall et al. v. Eisen Vineyard Co., 7 Misc. Rep. 674, 28 N. Y. Supp. 62.

Judgment reversed, with costs, and complaint dismissed, with costs.

BIJUR, J., concurs.

LEHMAN, J. (dissenting in part). The complaint alleges and the answer admits that the plaintiff and the defendant, prior to the 12th day of June, 1912, entered into an agreement to organize a domestic corporation under the name and style of the Bernard Granville Publishing Company and to conduct a music publishing business in the borough of Manhattan. On June 12th, and for some time prior thereto, the parties conducted this business pursuant to said agreement, published music, purchased and sold the same, and had incurred considerable expense. The complaint then alleges, among other things, and the answer denies:

"Fifth. That on or about the said 12th day of June, 1915, the plaintiff above named sold, assigned, transferred, and set over unto the defendant herein all the said plaintiff's right, title, and interest in and to the said business being conducted under the name of Bernard Granville Publishing Company.

"Sixth. That the reasonable value of the said right, title, and interest of the plaintiff herein then was and now is the sum of $1,000, which sum the defendant herein agreed to pay unto the plaintiff herein."

At the trial there was no dispute as to the facts. The parties at that time stipulated practically all the material facts. By that stipulation it was agreed that the plaintiff's investment in the business consisted of items aggregating the sum of $786.96. The stipulation further recites:

"The parties hereto further admit that the possession and control of said business has ever since the 12th day of June, 1915, been vested in the defendant.

"The defendant admits that he has not paid plaintiff anything on account of the alleged claim of the plaintiff herein.

"The parties hereto admit that no verbal agreement or conversation with reference to the allegations contained in paragraph V of the complaint took place between the plaintiff and the defendant, or any of their agents or representatives, and that the said alleged agreement, if it exists, is contained in the annexed Exhibits A to T, inclusive."

After this stipulation was placed upon the record, the parties submitted the issues to the decision of the court without any motion on the part of the defendant to dismiss the complaint. Apparently both parties conceded that the real issue involved in the case was whether Exhibits A to T, which consist of telegrams which passed between the parties, constitute a binding contract. The learned trial justice has held that they do constitute a contract, and the defendant now appeals, claiming in effect that they constitute an offer and a counter offer. I entirely agree with the analysis of these telegrams contained in the opinion of Mr. Justice FINCH, and I agree that on their face they show that the offer of the plaintiff was not unconditionally accepted by the defendant. If the question before us now were whether the de-

fendant's conditional acceptance bound the plaintiff to his offer, or even if the question before us were whether the defendant could be held to his conditional acceptance before the plaintiff in turn accepted the new conditions imposed by the defendant, I should unhesitatingly agree with the conclusion of Mr. Justice FINCH.

The question before us is, however, not so simple, for, as shown above, the parties have stipulated that ever since the 12th day of June, 1915, the possession and control of said business has been *vested in the defendant* and that if any agreement was made between the parties for the sale of plaintiff's interests it is contained in the telegrams. This stipulation in my opinion takes this case out of the rule of the decisions relied upon by the defendant. In this case we have, not only an offer to sell the plaintiff's interest and a conditional acceptance of the offer, but also the conceded fact that thereafter and without further agreement the possession and control of the business vested in the defendant. In other words, it appears absolutely without dispute that both parties have assumed that the exchange of telegrams has resulted in a change in the status of the parties, and the defendant has obtained the benefit of his conditional acceptance of plaintiff's offer.

It seems to me that under these circumstances we cannot consider whether the offer and the conditional acceptance constituted a contract, but we are bound to hold that, since the conditional acceptance has been acted upon by both parties, this constitutes a contract between them. It seems to me that any other result would be clearly anomalous; for by the stipulation of the parties the possession and control of the business has *vested* in the defendant, yet, if we dismiss the complaint on the ground that the defendant has never agreed to pay for the plaintiff's share, the plaintiff will be absolutely precluded from ever obtaining any judgment for the value of the rights he has given up, relying on the defendant's conditional acceptance of his offer to sell.

One difficulty, however, still remains in the case. Mr. Justice FINCH has clearly pointed out that the defendant attached two conditions to his acceptance of plaintiff's offer, viz., that he would pay *when he is capable* and that he would pay *what he thinks* is due the plaintiff as per his offer to sell. The defendant chose to consider this conditional acceptance as an acceptance of his offer, and so notified the manager of the business, and apparently all the parties have acted upon this notification to the manager, and the defendant has thereby obtained the control of the business. The plaintiff had a perfect right to act upon the defendant's conditional acceptance, regarding it practically as a counter offer; but he could not accept the benefits and disregard the burden of the offer. Therefore we must give due effect to the conditions imposed in that counter offer. The condition that the defendant would pay what he *thinks* is due is of no importance, because he has stipulated the exact amount of the plaintiff's investment, and of course the offer does not permit him to act arbitrarily or in bad faith; consequently the conceded amount of plaintiff's investment fixes the amount which defendant agreed to pay. He agreed,

however, to pay only "when I am capable." This constitutes a condition precedent to any right of action. See Tebo v. Robinson, 100 N. Y. 27, 2 N. E. 383. And the record is absolutely devoid of proof that this condition has been complied with.

The defendant did not, however, move to dismiss the complaint on any such ground, and it may well be that the defendant thereby waived this requirement. However, in view of the informal manner in which the case was tried, I think that the interests of justice require a new trial, at which this issue may be litigated.

Judgment should be reversed, and a new trial ordered, with costs to abide the event.